# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **R.E.**

**No. 21-0238** (Barbour County 18-JA-15)

## MEMORANDUM DECISION

Petitioner Father F.E., by counsel A. Tyler Reseter, appeals the Circuit Court of Barbour County's February 19, 2021, order terminating his parental rights to R.E.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Brittany N. Ryers-Hindbaugh, filed a response in support of the circuit court's order. The guardian ad litem, Allison C. Iapalucci, filed a response on the child's behalf in support of the circuit court's order. On appeal, petitioner argues that the DHHR failed to fully investigate the allegations in the petition and the circuit court erred in finding the children's forensic interviews credible and making erroneous factual findings in adjudicating petitioner as an abusing parent.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2018, the DHHR filed a child abuse and neglect petition alleging that petitioner sexually abused his stepdaughters, then thirteen-year-old T.N. and then fifteen-year-old A.N., and exposed the children, including then five-year-old R.E., to domestic violence. The DHHR alleged that T.N. was sitting with petitioner on a couch in their living room when he began touching her genitals. According to the DHHR, T.N. stated that when petitioner left the couch, she got up and told A.N. what occurred. The daughters then told the mother what had transpired. Following T.N.'s disclosure, A.N. related that petitioner once placed her hand on his

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

crotch as a "dare" while they were riding a four-wheeler with R.E. The mother decided that they would get R.E. and leave the home. Petitioner allegedly confronted them as they left, "forcibly grabbed [R.E.]," and tore the child's coat. The DHHR alleged that the daughters participated in follow-up forensic interviews ("CAC interviews") and both alleged that petitioner sexually abused them. The children were placed with the mother following the petition's filing.

Later in February of 2018, the circuit court held a preliminary hearing, found that the children's continuation in petitioner's home was not in their best interests, and ratified their placement in the mother's custody. The DHHR introduced the children's forensic interviews into the record without objection. The circuit court also noted that a family court issued an emergency protective order that prohibited petitioner from contact with all three children. Accordingly, the circuit court ordered that petitioner was not permitted any visitation with R.E.[2]

The DHHR filed an amended child abuse and neglect petition in May of 2019. The DHHR alleged that the mother admitted to using methamphetamine and marijuana and tested positive for those substances, as well as benzodiazepines and fentanyl. Further, the DHHR alleged that the children reported the mother had a boyfriend who would "sneak" into the apartment complex. The DHHR confirmed that the boyfriend had an open child protective services case related to allegations of sexually abusing a minor. Finally, the DHHR alleged that the mother struck T.N. during a physical altercation at the home.

The circuit court held adjudicatory hearings in June and August of 2020. The DHHR presented testimony from the children's forensic interviewer, an investigating law enforcement officer, a DHHR worker, and the children's therapists. Additionally, the children's recorded forensic interviews were admitted as evidence without objection. The circuit court found that the subject matter of the interviews was "emotionally traumatic" for the children and that it would be detrimental to the progress of the children's therapy to testify about the incidents. The circuit court concluded that the potential psychological harm to the children outweighed the necessity of the children's testimony. Petitioner did not object to this finding but sought to introduce a written list of alleged inconsistencies in the children's interviews. The circuit court granted petitioner leave to file a list of the alleged inconsistencies, which petitioner filed prior to the entry of adjudicatory order.

Petitioner presented testimony from multiple family members and testified on his own behalf. In particular, R.M., petitioner's sister-in-law, testified that she overheard a conversation between the mother and petitioner's mother-in-law, J.W. R.M. testified that the mother said that if petitioner wanted custody of R.E., the mother would find a way to get R.E. and would tell T.N.

---

[2]During the hearing, petitioner indicated he was willing to relinquish his custodial rights to T.N. and A.N. and did not request visitation with those children. Petitioner later relinquished his custodial rights to these children in May of 2018.

and A.N. a story to ensure that she received custody.[3] J.W. also testified but did not mention the alleged conversation R.M. testified that she overheard J.W. having with the mother. J.W. testified that during an argument between the siblings after the petition was filed, R.E. exclaimed that petitioner "touched his sister down there." T.N. allegedly responded, "maybe he did, maybe he didn't."

Z.H., a step-cousin of T.N. and A.N., testified she was "really close" with T.N. Z.H. shared a room with T.N. and also vacationed with the family during the pendency of the proceedings. Z.H. testified that, during the vacation, T.N. stated she fabricated the allegations against petitioner because the mother instructed her to do so. Z.H. explained that although the girls were close, this was the only time that T.N. mentioned the sexual abuse to Z.H. in any respect. Z.H. also testified that T.N. referred to petitioner as "it," which Z.H. found disrespectful. While on vacation, Z.H. confronted T.N. regarding her moniker for petitioner and T.N. "stormed off" following an argument. Z.H. testified that she was unaware of the criminal charges pending against petitioner and had not reported T.N.'s statement to the authorities or the DHHR.

Ultimately, the circuit court adjudicated petitioner as an abusing parent in September of 2020. The court noted that it had not only listened to the witnesses but took "particular concern to review and examine the summation of inconsistences regarding the children's disclosures" identified by petitioner. The court found that "there are indeed technical inconsistencies in the children's testimony; however, those inconsistencies are not in any way fatal to the [DHHR's] case." The circuit court considered that the children expressed "differing points of view . . . [concerning] the alleged sexual abuse." The court reasoned that "[m]ore important than the limited inconsistences mentioned by [petitioner], are the other aspects of the children's CAC interviews that make them believable and credible" such as "the rapidity with which answers were provided, along with the lack of hesitation in the children's answers" giving the appearance that the children were "recalling an event, rather than recalling a story they had been told to recite." The court noted that the children were "also of an age wherein if they wanted to recant, they have the ability to do so openly and without question."

The circuit court further considered that the children's treatment professionals provided "particularly persuasive testimony." A.N.'s treatment professional documented A.N.'s "nightmares, panic attacks, and a hyper vigilant response" as well as low self-esteem and issues with concentration, which were all consistent with a child who had been sexually abused. Similarly, T.N. demonstrated a "guarded personality," was paranoid that petitioner would arrive at her home, and exhibited an "unusual interest in older men." The circuit court found that the symptoms and behaviors described by the children's treatment professionals were further indicia that the children were abused.

In considering petitioner's witnesses, the circuit court determined they lacked credibility. Regarding petitioner's sister-in-law (R.M.), the circuit court considered that the conversation she

[3]The evidence below indicated that the relationship between petitioner and the mother was strained, but the parties had not filed for divorce at the time the petition was filed.

overheard was "without substantive context and therefore, it is indicative of nothing." The court noted "the alleged participants were [the mother] and [J.W.]; however, [J.W.], who testified in this matter, never mentioned hearing what [R.M.] claimed she overheard." Regarding T.N.'s step-cousin (Z.H.), the circuit court found that she failed to explain her "action and later inaction." The court considered that Z.H. was "so offended [T.N.] and [A.N.] referred to [petitioner] as 'it' rather than 'dad' she was compelled to insert herself into a sensitive affair that was not her concern." However, "at the same time, [Z.H.] apparently had no concern about [petitioner] being wrongly accused of sexual abuse since she took no action to inform anyone or clear him in anyway." The court also examined Z.H.'s demeanor during testimony, stating that "she would not make eye contact" with the court while answering its questions. The court concluded that Z.H.'s behaviors were inconsistent, incompatible, and degraded her credibility.

Finally, the circuit court considered petitioner's denial of the allegations of sexual abuse. Petitioner testified that he was sharing a blanket with T.N. on the day she alleged that he sexually abused her. However, he asserted that he was "tickling" her under the blanket and nothing more. The circuit court then considered petitioner's testimony that "there were multiple and chronic fights, arguments, and altercations between him and [T.N.]," which was "in opposition to a cuddly snug[g]ly relationship" that he depicted in his version of events. The court found that petitioner's testimony that he was merely tickling T.N. under the blanket was nonsensical "as the facts of that relationship do not support that scenario." Similarly, the court found it was unreasonable that petitioner "would not find it awkward to engage in 'tickling' under a blanket with a child that [was] not his own biological child." The court finally considered that T.N. was a teenage girl and "too old to be 'tickled' under a blanket."

Petitioner insisted, during his testimony, that all of the allegations were a result of the mother's plan to gain custody of R.E., which the court found to be meritless. The circuit court considered that in order for this to be true, "one must first accept there was a grand conspiracy" between the mother and the two girls. The court noted that the girls' disclosures were made to the mother "shortly after" the alleged sexual abuse of T.N. occurred on January 28, 2018. It reasoned that the allegations necessarily needed to be "pre-made and crafted to be consistent" and "set to happen quickly as soon as [petitioner] was in a questionable position, such as when he was 'tickling' [T.N.] under a blanket." However, the evidence also showed that the mother "could not even keep track of her children," leading the court to find that such a conspiracy was "not just unlikely, but impossible."

Based on the foregoing, the circuit court found that the children's disclosures from their CAC interviews were credible and that the sexual abuse occurred. It found that the DHHR had proven the allegations of sexual abuse and domestic violence, as contained in the child abuse and neglect petition, by clear and convincing evidence. The circuit court adjudicated R.E. as an abused child and petitioner as an abusing parent. Further, the circuit court found that aggravated circumstances existed as a result of the sexual abuse of T.N. and A.N. The circuit court set the case for a dispositional hearing.

In November of 2020, the circuit court held a final dispositional hearing. Petitioner, through counsel, reaffirmed his position that he engaged in no wrongdoing, while also acknowledging that in the absence of an admission of any wrongdoing he would not be granted

an improvement period. The DHHR and guardian moved to terminate petitioner's parental rights based upon the circuit court's finding that petitioner sexually abused T.N. and A.N. The circuit court found that termination of petitioner's parental rights was the least-restrictive disposition in the case and that termination was in R.E.'s best interests. Accordingly, the circuit court terminated petitioner's parental rights to R.E. by its February 19, 2021, order. Petitioner now appeals that order.[4]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

Petitioner's three assignments of error relate directly to the adjudicatory phase of the proceedings below. Regarding adjudication, this Court has held that

> "[West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (citations omitted). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *In re F.S.*, 233 W. Va. 538, 546, 759 S.E.2d 769, 777 (2014). However, "the clear

---

[4]The mother's parental rights to R.E. were terminated during the proceedings below. According to the parties, the permanency plan for the child is adoption in his current foster placement.

and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.*

Petitioner first argues that the DHHR erred in failing to conduct a thorough investigation of the allegations. Petitioner cites to West Virginia Child Protective Services Policy 4.6, which requires the DHHR to conduct a sufficient number of interviews "to assure that due diligence is demonstrated, and sufficient information is collected to assess threats of serious harm and determine if the children are abused or neglect."[5] He argues that the DHHR should have investigated the "post-petition disclosures" made to Z.H. and J.W. and failed to do so, which violated its own policy.

Upon our review, we find no prejudicial error in this regard. Petitioner has not identified any requirement that the DHHR continue to investigate the allegations following the filing of a petition of child abuse and neglect.[6] Assuming, arguendo, that such a requirement existed, petitioner has not cited to any case law that requires the vacation and remand of a final dispositional order upon the DHHR's violation of its own internal policies. It is clear from the record that the DHHR initially investigated the matter, scheduled CAC interviews for the children, and presented the evidence to the circuit court. Furthermore, the statements of Z.H. and J.W., which petitioner complains the DHHR failed to investigate, were also presented to the circuit court. Therefore, any possible error that occurred as a result of the DHHR's alleged failure to investigate was ultimately resolved because the circuit court heard the evidence at issue and factored that evidence into its findings of fact and conclusions of law. Petitioner is entitled to no relief as a result of the DHHR's investigation below.

Next, petitioner argues that the circuit court erred in finding that the children's CAC interviews were "sufficiently credible" in light of evidence to the contrary. Petitioner takes

---

[5]Petitioner cited a portion of the West Virginia Child Protective Services Policy 4.6 which provides:

> Detailed information must be collected through interviews, observations, and written materials provided by knowledgeable individuals. The CPS Social Worker must conduct sufficient numbers of interviews of sufficient length and effort necessary to assure that due diligence is demonstrated, and sufficient information is collected to assess threats of serious harm and determine if the children are abused or neglected. The CPS Social Worker must conduct interviews with all parents and caregivers, children and other adults residing in the home, persons allegedly responsible for abuse/neglect/threats of serious harm, and collaterals.

[6]While petitioner cites to the West Virginia Child Protective Services Policy 4.6, Policy 4.1 clarifies that Section 4 refers to the "Family Functioning Assessment," more commonly referred to as the "investigation or initial assessment." Policy Section 4 details Child Protective Services procedure prior to the filing of an abuse and neglect petition.

particular issue with the circuit court's ruling that requiring the children to testify "would be traumatic" for the children to testify and that testifying was against their best interest.

Rule 8(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings provides that children "remain competent to testify." However, "there shall be a rebuttable presumption that the potential psychological harm to the child outweighs the necessity of the child's testimony and the court shall exclude this testimony if the potential psychological harm to the child outweighs the necessity of the child's testimony." *Id.* The circuit court's ruling in this case is consistent with the presumption that testifying would cause psychological harm to the children. On appeal, petitioner argues that the circuit court should have considered the ages of T.N. and A.N. and the relationship between petitioner and R.E. before ruling. Yet, it is clear that petitioner did not raise these arguments below and did not otherwise attempt to rebut the presumption that testifying would cause the children psychological harm. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009). Accordingly, the circuit court's ruling as to the children's testimony will not be reviewed as the issue was not preserved below.

Finally, petitioner argues that the circuit court's adjudicatory order contains numerous erroneous factual findings. In particular, petitioner asserts that the court erred in determining that the testimony of Z.H. was not credible; in referring to the children's CAC interviews as "testimony" or "eyewitness testimony;" in finding that the children's interviews were credible; in considering that T.N. and A.N. had not recanted their allegations, despite being of an age "wherein if they wanted to recant they have the ability to do so openly and without suggestion;" and in finding that in order to accept the presence of false allegations requires that "one must accept there was grand conspiracy between [the mother], T.N., and A.N." Petitioner asserts that the circuit court's finding that T.N. and A.N. had been sexually abused and that domestic violence occurred in the home is not plausible when viewing the record in its entirety.

It is worth reiterating that "in the context of abuse and neglect proceedings, the circuit court is the entity charged with weighing the credibility of witnesses and rendering findings of fact." *In re Emily*, 208 W. Va. 325, 339, 540 S.E.2d 542, 556 (2000) (citing Syl. pt. 1, *In re Travis W.,* 206 W.Va. 478, 525 S.E.2d 669 (1999)). *See also Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.").

This Court will not disturb the circuit court's credibility determinations regarding the children's CAC interviews. As noted above, the circuit court permitted petitioner to submit a proffer as to the alleged inconsistencies contained in the children's CAC interviews and, even considering petitioner's perspective, found that the interviews were sufficiently credible. Likewise, this Court will rely upon the circuit court's determination that Z.H. was not a credible witness. With these determinations in mind, we find that the circuit court's findings of fact are not clearly erroneous. The court found that T.N.'s disclosure that petitioner touched her inappropriately while he sat with her in their home, while concealed by a blanket, was credible.

Notably, petitioner did not deny that he shared a blanket with T.N. on the day in question but asserted that he was "tickling" teenage T.N. underneath the blanket. The court found that petitioner's testimony supported T.N.'s disclosures. Further, it found petitioner's testimony as to his actions underneath the blanket were not credible due to the combative relationship between petitioner and T.N., as well as T.N.'s age. Moreover, the circuit court found that the children's disclosures were supported by their treatment specialists, who provided evidence that the children suffered from adverse diagnoses that could be related to sexual abuse. In sum, we find that the circuit court's findings of fact are not clearly erroneous, the evidence produced below clearly and convincingly proved that petitioner had sexually abused the children, and petitioner is entitled to no relief on appeal.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 19, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: April 14, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton

**DISQUALIFIED:**

Justice Alan D. Moats sitting by temporary assignment